**Malcolm TURNER et ux., Appellants,**

**v.**

**Richard W. ENGLAND et al., Appellees.**

**No. 11–81–068–CV.**

Court of Appeals of Texas,
Eastland.

Feb. 4, 1982.

Rehearing Denied Feb. 24, 1982.

Joseph W. Geary and D. Ronald Reneker, Geary, Stahl & Spencer, Dallas, for appellants.

Robert L. Dillard III, Saner, Jack, Sallinger & Nichols, Allen R. Morris, Dallas, for appellees.

DICKENSON, Justice.

The controlling issue is whether a concrete slab is a "structure" which is prohibited by a restrictive covenant.

The property owners, Malcolm and Jo Ann Turner, began construction of a $40,000 tennis court on their lot. The neighbors, Richard W. England and others,[1] secured a permanent injunction[2] which commanded the owners "to cease and desist and refrain from constructing a tennis court ... in any manner that does not comply with paragraph 10 of the restrictive covenants...."[3] The property owners appeal the judgment which was rendered on January 20, 1981, following a nonjury trial.[4] We reverse the judgment, dissolve the injunction, and render judgment that plaintiff and intervenors take nothing.

While the property owners have briefed 27 points of error, we need only discuss the two which control our disposition of the appeal. Points 21 and 22 argue that the trial court erred in concluding that the concrete slab playing portion of the proposed tennis court is a "structure" or that it would violate the restrictive covenant. We sustain these points.

It is well settled in Texas that restrictive covenants are to be strictly construed against those who seek to restrict the use of property and that all doubt must be resolved in favor of the free use of the property. See, e.g., *Davis v. Huey*, 620 S.W.2d 561 (Tex.1981); *Southampton Civic Club v. Couch*, 322 S.W.2d 516 (Tex.1958); *Baker v. Henderson*, 153 S.W.2d 465 (Tex.Com.App.1941, opinion adopted); *Brown v. Wehner*, 610 S.W.2d 168 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Head v. Thomason*, 430 S.W.2d 369 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.).

The testimony shows that the lot in question is located on a bend of Chapel Hill Road, between White Rock Lake and Northwest Highway, and within the city

---

1. Suit was originally filed by Richard W. England, M.D., as plaintiff. The trial court permitted twenty-four other neighbors to intervene in the suit, seeking the same relief as that sought by plaintiff. The intervenors are Zaven Chakmakjian, Vivianne Chakmakjian, James J. Cupples, Billey N. Cupples, Reading Overstreet, Jr., Mrs. Reading Overstreet, Jr., W. Lamar Lovvorn, Mrs. W. Lamar Lovvorn, James R. Hill, Patricia Hill, Billy Barrett, Millie Barrett, Jim Alee, Mrs. Jim Alee, Tim K. Banner, Mary F. Banner, C. L. Maimbourg, Mrs. C. L. Maimbourg, Paul S. Neblett, Mrs. Paul S. Neblett, William H. Bradfield, Mrs. William H. Bradfield, James L. Brown and Mrs. James L. Brown.

2. Plaintiff and intervenors also secured judgment for their attorney fees in the sum of $3,347.00 and all costs of suit.

3. Paragraph 10 provides: "*No building, fence or other structure shall be constructed on any building site nearer to the front lot line or nearer to the side street line than the minimum setback required by the building line shown on the recorded plat....*" (emphasis added) The setback line on this lot was 50 feet from the right-of-way line of the adjacent street.

4. This case was transferred from the Dallas Court of Appeals to this Court on October 1, 1981. See Tex.Rev.Civ.Stat.Ann. art. 1738 (Vernon Supp.1982).

limits of Dallas, Dallas County, Texas. The plat [5] shows a 50' building line on the right side of the lot, and it shows a 20' building line on the lower side of the lot. Both of these lines have been approved by the City Plan Commission. The plat also shows the approximate location of the 50' building line shown on the recorded plat. The proposed tennis court does not cross the 20' building line, but it does extend across the 50' building line. The approximate location of the tennis court is shown in relation to the two "building" or "setback" lines. Dr. England, the plaintiff, lives next door to the proposed tennis court. The intervenors live in the subdivision.

Malcolm Turner testified that he and his wife bought the lot in 1979 and that they have secured a building permit for a house and tennis court on that lot. They commenced construction of the tennis court first, on or about October 1, 1980. Dr. England secured a temporary restraining order on October 22. The other neighbors intervened, and trial on the merits began on October 31. At that time there had been some soil preparation, and the wooden forms and reinforcing steel were laid. The proposed tennis court would be 118 feet long and 60 feet wide. One end would be within 50 feet of the street. It should be noted that there is a swimming pool on the lot across the street which is less than 40 feet from the street, and there are numerous street lights in the subdivision which are within a few feet of the street. There are also fences and stone walls which are closer than 50 feet to the streets in this subdivision. There are numerous paved driveways in this subdivision, and there is no contention that they are "structures."

Mr. Turner also testified that the tennis court will be level with the ground and that there is no plan to place any item above ground elevation within 50 feet of the

---

**5.** The tennis court has been superimposed on this plat, showing the disputed portion of the concrete slab as a shaded area.

street. The poles for the net will be further than 50 feet from the street, as will the lighting fixtures. Mr. Turner also testified that he is not planning to build any fence which would be within 50 feet of the street. He proposes to use shrubbery and netting on that end of the tennis court.[6]

The parties agree that this is a case of first impression in Texas. The property owners cite three out of state cases which hold that a tennis court is not a "structure" within the meaning of certain restrictive covenants or zoning regulations. Those cases are factually distinguishable. *Parrish v. Richards*, 8 Utah 2d 419, 336 P.2d 122 (1959), holds that "the tennis court and fence are not the type of structure prohibited by the covenant." *Klein v. Township*, 39 Pa.Cmwlth. 81, 395 A.2d 609 (Pa.Cmwlth. 1978), holds that "tennis courts, with incidental wire enclosures and lights are not prohibited structures" under a municipal zoning ordinance. *Williams v. Inspector of Buildings of Belmont*, 341 Mass. 188, 168 N.E.2d 257 (Mass.1960), states that "the wire fence or ball guard and the net posts are incidents of the tennis court and are no more structures within the zoning law than is the (tennis) court." We need not go as far as these out of state courts have held, for we are only called upon to decide if the concrete slab is a "structure" within the meaning of the restrictive covenant. There is no proof of any posts or fences within the 50 foot area to which the restrictions apply.

Both sides cite and discuss the case of *Stewart v. Welsh*, 142 Tex. 314, 178 S.W.2d 506 (1944, opinion adopted), which held that a fence violated a restrictive covenant against a "structure of any kind being built" where the fence was "not merely a trivial annoyance, but is a material obstacle to the use of the reserved area" as a utility easement for the installation of water, gas, sewer, light, power and telephone lines. *Stewart* states, 178 S.W.2d at 508:

> The word "structure" is often used in a broad sense, often in a restricted sense.

(T)he inclusion of the particular object within the term, or its exclusion therefrom, usually depends upon the context and purpose sought to be accomplished.

We will apply the general rule that a restrictive covenant must be construed strictly against those seeking to enforce it, resolving all doubts in favor of a free use of the property. *Davis v. Huey*, supra, *Southampton Civic Club v. Couch*, supra, *Baker v. Henderson*, supra, *Brown v. Wehner*, supra, and *Head v. Thomason*, supra. Consequently, we hold that the concrete slab is not a "structure" which would violate the restrictive covenant quoted in footnote 3.

The judgment of the trial court is reversed, the injunction is dissolved, and judgment is now rendered that plaintiff and intervenors take nothing.

---

**6.** If and when the property owners attempt to build a fence or "other structure" within 50 feet of the street, the neighbors will be free to seek an injunction. That issue is not before us, and we express no opinion on that potential dispute.